LEWIS S. CHESTER, appellant,

*v.*

SAMUEL CAMPBELL et al., respondents.

[Submitted May 12th, 1919. Determined May 13th, 1919.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

November 14th, 1918, defendant Samuel Campbell and his wife executed a written declaration of trust of certain real estate and personal property in Cape May county. The instrument recites that whereas Campbell, one Hunt, and complainant have purchased the property for $10,000, clear of all encumbrance, and whereas title to the same is to be taken in the name of Campbell; therefore it is acknowledged and declared by Campbell and his wife that the title is to be held by them in trust for Campbell, Hunt, and complainant, share and share alike, and that trustees will upon request of Hunt or complainant convey to either of them their one-third interest, or upon the sale of the property and conveyance to any purchaser mutually agreed upon one-third of the net proceeds from the sale shall go to each of said three parties.

The legal title to the property was thereafter taken by Campbell.

In December, 1918, Campbell, by letter to complainant, repudiated the trust, declaring that it had no legal or moral obligation.

Complainant then filed the present bill in which he prays Campbell may be decreed to hold one-third of the property in trust for complainant, subject to a lien of $10,000 in favor of Campbell; and also that Campbell may be decreed to convey to complainant a one-third interest subject to a lien in favor of Campbell of $10,000.

While the declaration of trust specifically declares that complainant is the owner of one-third of the property and Campbell and Hunt, respectively, are the owners of the remaining two-thirds, yet the bill avers, and the answer admits, that complainant's share was to be only one-third after the purchase price of $10,000, which was paid by Campbell, shall have been first received by him. To that extent the declaration of trust is imperfect in its terms. At the hearing complainant also testified, and Campbell's testimony was substantially to the same effect, that the real agreement was that he, complainant, was to have one-third of the profits of the transaction, above the $10,000 paid by Campbell, when the property should be sold. That, too, is in conflict with the specific terms of the trust instrument which provide that Campbell shall convey to complainant his one-third when he shall request it.

These two admitted inaccuracies in the declaration of trust obviously render it impossible to enforce it by decree in strict accordance with its terms. These two inaccuracies, however, may not necessarily afford insurmountable obstacles to a decree in behalf of complainant. Since the bill avers and the answer admits that any interest of complainant is subordinate to a lien of $10,000 in favor of Campbell a decree establishing the repudiated trust could appropriately so determine; and since the undisputed testimony is to the effect that it was not in fact contemplated by the parties that any division of the property should be made, but that when sold to a satisfactory purchaser the proceeds of sale in excess of $10,000 should be divided, a decree establishing complainant's interest could, in like manner, so provide.

The primary controversy arises from a vital disagreement of the parties touching the origin of the trust agreement. The property was, prior to the sale to Campbell, owned by one Mrs. Anderson who had placed it in the hands of complainant, as a real estate broker, for sale. Complainant, as agent of Mrs. Anderson, negotiated the sale to Campbell and received from Mrs. Anderson for his services the usual commissions of a real estate agent, pursuant to his contract with her. In such circumstances the law imposed upon complainant, as agent, the duty to make the best possible bargain for his principal. In the performance of that duty the law requires of the agent an undivided devotion to the best interests of his principal; accordingly an agent, so circumstanced, is not permitted to become personally interested in the sale, except to the extent of his commissions. Should a real estate agent, having property of another for sale, become personally interested in the sale, without knowledge of the owner of the property, it is entirely obvious that his personal interests would be so far antagonistic to the interests of the owner as to militate against the full performance of his duty to the owner. While in such circumstances he might fully perform his duties to the owner, the temptations of personal gain would be such as to deny to him the privilege to subject himself to such temptations. Hence no court of equity could properly aid him in enforcing his interests so acquired in the property sold. The principles underlying *Stewart* v. *Lehigh Valley Railway Co., 38 N. J. Law 505, 522,* inhere in the situation stated. But, of course, after a sale has been made no reason exists to forbid the agent to acquire an interest, if his former agency has in no way entered into or influenced the subsequent transaction.

Complainant herein claims that his interest in the property here in controversy was acquired after the sale to Campbell had been fully agreed upon and the first or deposit payment had been made and the agreement had been approved by Mrs. Anderson. Complainant claims that a few days after the sale had been agreed upon and a deposit made he agreed with Campbell to perform certain services in connection with repairs to the property and also to assist in finding a purchaser at an ad-

vanced price, in consideration of which he was to have one-third of Campbell's profits when a sale was made; and that accordingly the declaration of trust was drawn and executed to insure to complainant that interest.

Campbell claims that his agreement with complainant was made before the sale was agreed upon and that it formed a part of the terms of the sale. His testimony is to the effect that while the sale to him was being negotiated complainant stated to him that Mrs. Anderson required the full $10,000 and was to allow to complainant no commissions and that he, Campbell, would needs provide for complainant's compensation if he purchased at $10,000. Also that complainant stated he had in view another purchaser to whom he thought a sale could be made at a good profit. It was by reason of these statements of complainant that Campbell says he agreed to pay $10,000 for the property and give complainant one-third of the profits should the property be subsequently sold at a profit. Campbell's testimony is measurably corroborated by the testimony of Hunt, who was Campbell's partner in the transaction. Hunt, by his consent and by consent of all parties, has been made a defendant at the hearing and has agreed to stand on Campbell's answer. Complainant denies the truth of these claims of Campbell and Hunt.

The testimony is in such radical conflict that it is practically impossible to ascertain the exact truth with certainty.

The primary question is whether the agreement between complainant and Campbell whereby complainant was to become personally interested in the profits of Campbell in the transaction was made before or after Campbell had agreed to buy. Whether or not complainant represented that he was to receive no commissions from Mrs. Anderson is, I think, quite immaterial, if, in fact, complainant became personally interested in the property while negotiating the sale as agent of Mrs. Anderson; that fact alone would, in my judgment, prevent a court of equity from extending the relief here sought.

The declaration of trust is framed in a manner to strongly indicate that complainant was an original purchaser. It says:

"Whereas, said Samuel Campbell, of Bridgeton, State of New Jersey, M. J. Hunt, of Philadelphia, State of Pennsylvania, and Lewis S. Chester, of Sea Isle City, State of New Jersey, have purchased The Rio Grande Pickling factory and lot or piece of ground located at Rio Grande, Cape May County and State of New Jersey, together with all machinery, fixtures and personal property now in and belonging to same for the price or sum of ten thousand dollars, clear of all encumbrance. And whereas, the title to the said property is to be taken in the name of Samuel Campbell."

This recitation clearly is to the effect that the original purchase was in the interest of the three persons named.

But perhaps the admitted inaccuracies of the declaration of trust might deny to it any considerable force in the recitation above quoted but for the specific averments of the bill, paragraph 4 of the bill is as follows:

"4. That your complainant represented the owner of said premises, said Cecelia E. Anderson, in the sale of said premises and secured said Samuel Campbell as the purchaser thereof; that said Cecelia E. Anderson, fixed her price of ten thousand dollars as the price for which she would sell said premises; that said Cecelia E. Anderson advised complainant and told complainant that whatever he received for said premises over and above said sum of ten thousand dollars he could have and receive for his services in selling said premises and besides which she would pay him a commission of five hundred dollars; that with this understanding your complainant, some time in the month of October, nineteen hundred and eighteen, to wit, October 24th, 1918, took up with said Samuel Campbell the matter of purchasing said premises for the sum of ten thousand dollars, and giving your complainant one-third of whatever profit he the said Samuel Campbell would make out of said premises, over and above the sum of ten thousand dollars to be paid therefor; that said Samuel Campbell agreed to purchase said premises for the sum of ten thousand dollars, for himself and your complainant and Mr. Hunt, through your complainant, and also agreed to give him one-third of whatever profit he would make out of said premises and to convey to complainant a one-third interest in said premises, over and above said ten thousand dollars; that in pursuance of said understanding, said

Samuel Campbell signed and gave to your complainant a writing or agreement wherein he agreed to purchase said premises from said Cecelia E. Anderson for the sum of ten thousand dollars and also gave to your complainant the following writing, signed by him and his wife, Lillian M. Campbell, which writing is as follows, viz. :"

It will thus be observed that the bill specifically avers that Mrs. Anderson had authorized complainant to sell for $10,000 less his commissions, and to take for himself, in addition to his commissions, whatever he could get over $10,000; and that with that understanding complainant sold to Campbell for $10,000 and one-third of Campbell's profits in the transaction.

At the hearing neither complainant nor Mrs. Anderson supported this claim that she had authorized complainant to take what he could get above $10,000. Complainant testified that he sold for $10,000 and no more, and that his interest arose solely under an agreement subsequently made. That claim was clearly contrary to the very averments of the bill in that respect.

In view of the conflict of testimony and the terms of the trust agreement and averments of the bill above quoted, I am convinced that no decree can properly be awarded to complainant. I am accordingly obliged to advise a decree dismissing the bill.

*Mr. William J. Kraft,* for the appellant.

*Mr. J. Ogden Burt,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.